UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

TIMOTHY WADE JOSEPH LAURICH,

    Plaintiff,

v.    Case No. 2:13-cv-252
    HON. TIMOTHY P. GREELEY

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.
_____/

## **OPINION**

Plaintiff Timothy Wade Joseph Laurich was born on November 15, 1975, and worked for many years in the trucking business or as a truck driver. Transcript of Administrative Hearing at pages 41, 29-30 (hereinafter Tr. at __). Plaintiff applied for Supplemental Security Income (SSI) benefits on May 26, 2010. Tr. at 105. The Social Security Administration denied SSI benefits on August 5, 2010. Tr. at 57. Plaintiff filed a Request for Hearing by an Administrative Law Judge (ALJ) on September 29, 2010. Tr. at 62. A hearing was held on November 15, 2011, at which ALJ Robert L. Bartelt, Jr., presided. Plaintiff and vocational expert David P. Ostwald testified. Tr. at 21. ALJ Bartelt found Plaintiff not under a disability as defined by the Social Security Act on April 13, 2012. Tr. at 15. Plaintiff filed a Request for Review of Hearing Decision/Order on June 8, 2012. Tr. at 6. On June 20, 2013, the Appeals Council denied Plaintiff's request for a review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner. Tr. at 1. Plaintiff filed this action seeking reversal of the ALJ's decision.[1]

---

[1] Both parties consented to proceed before a Magistrate Judge on November 14, 2013.

The medical records establish that Plaintiff has suffered from cystic fibrosis since birth. He sees Alin Sora, M.D., on a monthly basis to assess his cystic fibrosis. Tr. at 160-170. Plaintiff stated to Dr. Sora at each appointment since January 21, 2010, that he has been unable to work due to his condition. Tr. at 160-164. Plaintiff also suffers from recurring and chronic sinusitis and upper respiratory infections for which he takes antibiotics. Tr. at 160-164. Plaintiff testified that on bad days he is unable to get out of bed and that these bad days can last from ten to fourteen days and occur up to two or three times a month. Tr. at 32. Plaintiff also testified that he had significant weight loss due to digestion issues related to his cystic fibrosis. Tr. at 23. Plaintiff maintains that he provides for his daily needs with assistance from his mother and nephew. Tr. at 28. The Medical Source Statement of Ability To Do Work-Related Activities, completed by Dr. James E. Rocco, found Plaintiff able to fully function part of the time, while being bed-ridden the other part of the time due to his cystic fibrosis. Tr. at 195-204.

The findings of the ALJ are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is defined as more than a mere scintilla of evidence but "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Jones v. Sec'y, Human and Health Serv.*, 945 F.2d 1365, 1369 (6th Cir. 1991). Plaintiff bears the burden to prove that he has a disability that disallows him to engage in any substantial gainful activity. 20 C.F.R. § 416.912. "A subjective allegation of disabling symptoms alone is insufficient; the claimant must substantiate the symptoms by objective clinical or lab findings." *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 498 (6th Cir. 2006). The ALJ's decision cannot be overturned if sufficient evidence supports the decision regardless of whether evidence also supports a contradictory conclusion. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003).

The ALJ must use a five-step sequential analysis in determining disability. 20 C.F.R § 404.1520. To support a finding of not disabled under the fifth step, the Social Security Administration is responsible for providing evidence that a significant number of jobs exist in the national economy that Plaintiff can perform. 20 C.F.R. § 404.1560(c)(2). This Court must affirm the ALJ's findings if sufficient evidence supports the decision even if evidence supports an alternative conclusion.

Plaintiff argues that the ALJ erred in finding (1) that he could perform light work and sedentary work; (2) that the decision was supported by the vocational expert's testimony; and (3) that the vocational expert testified there were jobs in the national economy that Plaintiff could perform. The ALJ relied on the vocational expert's determination that Plaintiff's prior work equaled "skilled, medium" work. Tr. at 13, 44. The ALJ further relied on the Medical-Vocational Guidelines grid, supplied in Appendix 2 to Subpart P of Part 404, to declare Plaintiff not under a disability, finding Plaintiff would "still be able to perform the requirements of other light and sedentary jobs that exist in significant numbers in the national economy." Tr. at 14. The ALJ disregarded Plaintiff's statements that he is unable to get out of bed when he has bad days because "actual objective findings" do not show the impairment to be "disabling in severity." Tr. at 14. However, this conclusion is in opposition to Appendix 1 to Subpart P of Part 404, Section 3.00 Respiratory System, which states "[s]ome disorders, such as bronchiectasis, cystic fibrosis, and asthma, can be associated with intermittent exacerbations of such frequency and intensity that they produce a disabling impairment, *even when pulmonary function during periods of relative clinical stability is relatively well-maintained*." § 3.00(A) (emphasis added). The section further contends "[t]hese listings are examples of common respiratory disorders that are severe enough to prevent a person from engaging in any gainful activity." *Id.*

The medical evidence of record supports Plaintiff's claims of severe symptoms that interfere with Plaintiff's ability to perform substantial gainful activity. Plaintiff was assessed on May 18, 2010, of "recurrent sinus infection, tiredness with periods of profound fatigue and unable to work alternating with periods of when [Plaintiff] feels a little better." Tr. at 161. Additional diagnoses include "cystic fibrosis with recurrent upper respiratory infections" on January 21, 2010; "cystic fibrosis with respiratory and possible GI symptoms" on March 15, 2010; and "gastritis" on April 16, 2010. Tr. at 164, 163, 162. A post-bronchodilator test performed at Baraga County Memorial Hospital Respiratory Care Department showed Plaintiff's FVC, FEV1, and peak flow levels had decreased significantly from pre-bronchodilator testing results, showing these levels at well below those predicted, and noting fatigue as a possible cause. Tr. at 171.

Appendix 1 to Subpart P of Part 404 states that "[b]ecause cystic fibrosis may involve the respiratory and digestive body systems, the combined effects of the involvement of these body systems must be considered in case adjudication." On June 2, 2009, Plaintiff received emergency care for abdominal pain, in which he was treated and advised of positive testing for H pylori (bacteria responsible for ulcers). Tr. at 180-186. An assessment by James E. Rocco, M.D., as requested by the Disability Determination Service, concluded that Plaintiff suffered from "cystic fibrosis – worsening condition overtime" and "acute gastritis/PUD – Prilosec." Tr. at 192-194. The medical evidence of record also shows that Plaintiff's gastric issues are likely caused by the antibiotics Plaintiff must take regularly to treat the acute sinusitis. Tr. at 163. Additionally, Plaintiff testified to a weight loss of approximately fifty pounds or more in one year due to difficulty with his digestive capabilities. Tr. at 23. The ALJ acknowledged the treatment for digestive issues in the decision when he stated "[r]ecently, [Plaintiff] has also demonstrated symptoms of acute

gastritis/peptic ulcer disease," but the ALJ failed to address the combined effects of the acute gastritis and cystic fibrosis in his analysis. Tr. at 13.

The ALJ stated "[Plaintiff] has not undergone extensive treatment" as support for the finding that Plaintiff's conditions do not equate a listing level disability. Tr. at 13 (emphasis in the original). However, the medical evidence of record from Dr. Sora indicates multiple recommendations to Plaintiff to seek additional treatment at the Tertiary Center for his cystic fibrosis. Tr. at 160, 161. At the hearing, Plaintiff testified he was unable to get extensive treatment from the center because he had not "been able to financially get down there." Tr. at 31. A claimant cannot be denied disability benefits because he cannot afford prescribed treatment. SSR 82-59. The ALJ erred in finding that Plaintiff was not disabled because he failed to undergo extensive treatment since Plaintiff lacked the resources to afford the treatment.

Plaintiff claims that the ALJ erred in finding that the testimony of the vocational expert supported the finding that Plaintiff could perform light and sedentary work. The vocational expert testified that if Plaintiff could use the VEST device "just one time 20 minutes and he could do that at lunch or whatever, you know, then an employer would most likely allow him to, you know, continue working." Tr. at 45. However, the vocational expert also testified that "[t]he most significant is the long days that [Plaintiff] would miss within the month's period where he indicates ten days to two weeks during the month of missed work." *Id.* Therefore, there is limited evidence in the record to support the ALJ's finding that the testimony of the vocational expert supported a finding that Plaintiff could perform light and sedentary work.

Plaintiff claims that the ALJ erred in finding that the vocational expert stated there were jobs in the national economy that Plaintiff could perform. In response to this claim, Defendant refers to *Burton*, which found that if, as in this case, the RFC does not match the definitions of one

- 5 -

of the ranges of work because of nonexertional limitations, the Commissioner uses the grids only as "a framework for decision, but must rely on other evidence to carry his burden." *Burton v. Sec'y of Health and Human Servs.*, 893 F.2d 821, 822 (6th Cir. 1990).  The ALJ relied on the vocational expert's testimony that there were jobs in the economy that Plaintiff could perform as other evidence to carry his burden.  Tr. at 14.  However, the questioning of the vocational expert failed to identify jobs that Plaintiff could perform given his condition.  The ALJ questioned the vocational expert as follows:

> Q.  If you would, assume for purposes of this question then an individual of the claimant's age, education, and work experience; had the limitations expressed in the testimony and specifically the use of a device to loosen mucus at the frequency he described.  Would there be jobs such an individual could perform?
>
> A.  No, Your Honor.
>
> Q.  And from the testimony, what is most significant vocationally?
>
> A.  The most significant is the long days that he would miss within the month's period where he indicates 10 days to two weeks during the month of missed work and the need to also–both would equally be representative, but that's dependent upon the one to three.  If it were just one time 20 minutes and he could do that at lunch or whatever, you know, then an employer would most likely allow him to, you know, continue working.  However, if it's going to be at various different times during the day and it's going to vary one to three times, then typically [INAUDIBLE].

Q. If he had to do it say three times–say two or three times a month and it would be not necessarily coincide with the lunch break, would that be tolerated?

> A.  Not typically.

Tr. at 45-46.

The ALJ relied on the vocational expert's testimony given above as support that Plaintiff would still be able to perform the requirements of other light and sedentary jobs that exist

in significant numbers in the national economy. Tr. at 14. However, the testimony does not provide substantial evidence in support of the ALJ's finding that a significant number of jobs are available for a person with Plaintiff's ailments. The ALJ failed to ask the vocational expert what positions were available that Plaintiff could perform or how many positions existed in the region. The ALJ disregarded the vocational expert's declaration that Plaintiff could not work given the number of missed days of work expected each month, as well as his occasional need to use the VEST multiple times a day. The vocational expert stated multiple times that no jobs existed for a person similarly situated to Plaintiff. Therefore, the vocational expert's testimony does not support the ALJ's finding that jobs exist in significant numbers in the national economy.

After careful review of the record, I find that there is not substantial evidence to support the ALJ's finding that Plaintiff is not under a disability as defined by the Social Security Administration. The Commissioner failed to meet its burden of proving there are a significant number of positions available that Plaintiff can perform in the region as required by step five of the evaluation process under 20 C.F.R. 416.920.

The decision by the Commissioner is REVERSED and the case REMANDED for calculation and award of benefits.

 /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:   June 18, 2014